IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA CAMPEGGIO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UPPER POTTSGROVE TOWNSHIP, et al. | : | NO. 14-1286 |

MEMORANDUM

Dalzell, J.                                                September 8, 2014

## I.      Introduction

We consider here the  motion under Fed. R. Civ. P. 12(b)(6) of defendants Upper
Pottsgrove Township and West Pottsgrove Township ("the Townships"), Upper Pottsgrove
Township Police Chief William Moffet and West Pottsgrove Township Police Chief Earl
Swavely ("the Police Chiefs"), Officer Sean Farrell, Officer Jim Hummer, and Corporal Brian
Cass's to dismiss part of plaintiff's amended complaint.

Melinda Campeggio ("Campeggio") brings this action against the defendants, as well as
Police Officers John Does #1-6, pursuant to 42 U.S.C. § 1983 and state tort law.

We have federal question jurisdiction over Campeggio's Section 1983 claims[1] pursuant
to 28 U.S.C. § 1331. We have supplemental jurisdiction over Campeggio's state law claims[2]
pursuant to 28 U.S.C. § 1367.

Defendants move to dismiss Counts II, III, IV, VI, IX, and XI of the amended complaint.
Defendants also argue that Corporal Cass is entitled to qualified immunity on all of Campeggio's
Section 1983 claims. Def. MTD at 11.

---

[1] Count I for excessive force, Count II for false arrest and false imprisonment, Count III
for failure to train and supervise, Count VI for conspiracy, Count VII for bystander liability, and
Count IX for malicious prosecution.

[2] Count IV for false arrest and false imprisonment, Count V for intentional infliction of
emotional distress, Count VIII for assault and battery, and Count XI for malicious prosecution.

## II.     Standard of Review

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document." <u>Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the amended complaint ("Am. Comp.").

### III.     Factual Background

Plaintiff Melinda Campeggio resides in Pottstown, Pennsylvania. Am. Comp. at ¶ 15. On March 16, 2012, around 1:30 a.m., Officers Sean Farrell and James Hummer and Corporal Brian Cass responded to "a report of shots fired and a male with a gun at 821 Farmington Ave." in Pottstown. <u>Id.</u> at ¶ 14. Campeggio was then in the backyard of her home with her dogs at 828 Farmington Avenue. <u>Id.</u> at ¶ 15. A neighbor, monitoring a police scanner, informed Campeggio that "police were coming to her house because of a report of shots fired." <u>Id.</u> at ¶ 16.

Officer James Hummer approached Campeggio with his assault rifle drawn. <u>Id.</u> at ¶ 15. A fence separated Officer Hummer and Campeggio. <u>Id.</u> at ¶ 17. When approached by Officer Hummer, Campeggio informed him "that there had been a mistake and no shots were fired and no one in her house had a gun." <u>Id.</u> at ¶ 18. After again advising Officer Hummer that there had been a mistake, she "turned away from [Officer] Hummer, in order to use her cell phone to call inside to her [boyfriend] and ask him to come outside." <u>Id.</u> at ¶ 19. Officer Hummer then grabbed her "around her neck, choking her and attempted to yank her over the fence." <u>Id.</u> At that time, Officer Farrell approached Campeggio "in her backyard [and] grabbed her legs and tried to assist" Officer Hummer "by throwing her legs over the fence." <u>Id.</u> at ¶ 20.

As the two officers allegedly tried to throw Campeggio over the fence, she "was unable to breath [sic] and her legs were uncontrollably flailing in the air, causing her to inadvertently kick" Officer Farrell, "who was trying to grab her legs." <u>Id.</u> at ¶ 21. After the officers unsuccessfully attempted to drag Campeggio over the fence, "she was violently taken to the

ground in her backyard by defendant Police Officer Sean Farrell and/or Defendant Corporal Brian Cass, acting in concert." Id. at ¶ 23. Campeggio was then handcuffed behind her back and her legs were restrained with zip ties. Id. at ¶ 24. While she was restrained on the ground, Officer Farrell yelled, "You're going to jail, you should have never fucking kicked me." Id. at ¶ 25. Officer Farrell then "stomped down on the plaintiff's right leg" and repeated his statement, "You're going to jail, you shouldn't have fucking kicked me." Id. at ¶ 26. With Officer Hummer and Corporal Cass "standing in close proximity with time to intervene," Officer Farrell then kicked Campeggio in her ribs. Id. at ¶ 28. Officers Hummer and Farrell and Corporal Cass then transported Campeggio to the Pottstown Police Department. Id. at ¶ 29. She was charged with two counts of aggravated assault, two counts of simple assault, one count of resisting arrest, and two counts of disorderly conduct. Id. at ¶ 30. Nothing is alleged about what happened thereafter. While at the Pottstown Police Department, Campeggio advised several police officers of her injuries, and they transported her to Pottstown Memorial Hospital for evaluation. Id. at ¶ 32-33. Campeggio "sustained severe personal injuries, including, but not limited to tearing of the posterior horn and extending into the posterious [sic] body of the medical [sic] meniscus,[3] sprain [sic] right knee, sprain [sic] left wrist, radial styloid tenosynovitis,[4] sprain of the cruciate ligament of the right knee and low back injuries." Id. at ¶ 34. Though recommended for surgery, Campeggio has not been able to obtain medical coverage for treatment. Id. at ¶ 35.

---

[3] The medial meniscus is a cartilage disc on the inner side of the knee. The cartilage absorbs shock and cushions the body's weight on the knee, enhancing stability. The posterior horn of the medial meniscus is located in the back of the knee. See Nat'l Inst. of Arthritis & Musculoskeletal & Skin Diseases, Questions and Answers About Knee Problems, Nat'l Insts. of Health (May 2014), http://www.niams.nih.gov/Health_Info/Sports_Injuries/default.asp.

[4] Radial styloid tenosynovitis, commonly called De Quervain's tenosynovitis, is an inflammation of the fluid-filled sheath that surrounds the tendons controlling the thumb. See Mayo Clinic Staff, Diseases and Conditions: De Quervain's tenosynovitis, Mayo Found. for Med. Educ. & Research (Aug. 1, 2012), http://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/CON-20027238?p=1.

On October 15, 2013, Campeggio was found not guilty of all charges in a bench trial before the Honorable Carolyn Carluccio in the Montgomery County Court of Common Pleas. Id. at ¶ 31. Campeggio avers that her arrest and prosecution have caused her "to suffer extreme physical harm, emotional harm and economic loss, including loss of earnings and or [sic] earnings capacity, and the necessity to spend various sums for her criminal defense in regard to the crimes she was accused and acquitted of." Id. at ¶ 41. In her amended complaint, Campeggio brings multiple claims under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and state tort law.

Campeggio avers that the Police Chiefs knew that their Townships' police officers, including Officers Hummer and Farrell, and Corporal Cass "engaged in unconstitutional conduct and [the Police Chiefs] acquiesced in such unconstitutional conduct." Id. at ¶ 37. Campeggio avers that Chief Moffett and Chief Swavely "maintained a policy and/or custom of allowing [police officers and the defendants] to use unreasonable force against the citizens of Pennsylvania, and to falsely arrest and maliciously prosecute individuals against whom they have used excessive force in an effort to cover-up, defend or justify the unreasonable use of force." Id. at ¶ 38.

In their partial motion to dismiss, defendants argue that the false arrest and false imprisonment claims should be dismissed because the officers had probable cause to arrest Campeggio. Def. MTD at 5. Defendants further argue that those claims should be dismissed as to Corporal Cass because he was not the arresting officer. Id. at 6. Defendants seek to dismiss the Monell claims against the Townships and Police Chiefs because municipal defendants cannot be held liable under a theory of respondeat superior; Chief Swavely and Chief Moffett are not final policymakers as a matter of law for Section 1983 liability purposes; and Campeggio fails to allege any facts supporting her legal conclusions that there is a practice, custom, policy, or

procedure of allowing excessive force or a failure to train and supervise. Id. at 6-8. Defendants also seek to dismiss Campeggio's supervisory liability claims against Chief Swavely and Chief Moffett based on a failure to allege any facts in support thereof. Id. at 8.

Defendants argue that the Section 1983 conspiracy claim should be dismissed because Campeggio has failed to allege facts regarding either a meeting of the minds or a concerted action to violate her rights. Id. at 10. Defendants contend that both counts for malicious prosecution under Section 1983 and Pennsylvania law should be dismissed because the officers had probable cause to arrest Campeggio. Id. at 11. Defendants finally argue that Corporal Cass is entitled to qualified immunity on all Section 1983 claims. Id. at 12.

## IV.    Discussion

The Supreme Court explains that a cause of action under Section 1983 requires only two allegations: some person has deprived the plaintiff of a federal right, and that person acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).

### A.    Official Capacity Claims

Defendants seek to dismiss Campeggio's Section 1983 claims against Officer Hummer, Officer Farrell, and Corporal Cass as redundant to Campeggio's claims against the Townships. Def. MTD at 4.  Campeggio's amended complaint omits her prior references to suing the individual defendants in their official capacities. Pl. Resp. at 14.

We therefore will deny defendants' motion to dismiss Campeggio's official capacity claims against Officer Farrell, Officer Hummer, and Corporal Cass as moot.

**B.**     **Claims Against Police Officers John Does #1-6**

Campeggio names Police Officers John Does #1-6 in her amended complaint, but makes no factual allegations against them. Though defendants have not moved to dismiss Campeggio's amended complaint against these officers, we may take the initiative to dismiss a complaint for failure to state a claim where the inadequacy of the complaint is apparent as a matter of law. See, e.g., Berg v. Obama, 574 F. Supp. 2d 509, 515 n.6 (E.D. Pa. 2008); Coggins v. Carpenter, 468 F. Supp. 270, 279 (E.D. Pa. 1979); see also 5 Wright and Miller, Federal Practice and Procedure § 1357.

Because Campeggio has failed to make any factual allegations against Police Officers John Does #1-6, we will dismiss all counts of the amended complaint as to them.

**C.**     **Counts II and IV: Section 1983 and State Law**
**False Arrest and False Imprisonment Claims**
**Against Officer Hummer, Officer Farrell, and Corporal Cass**

Defendants argue that Campeggio's false arrest and false imprisonment claims should be dismissed because the defendant officers had probable cause to arrest Campeggio. Def. MTD at 5. Campeggio argues that the defendant officers lacked probable cause to arrest her at the time of Officer Hummer's seizure of her, Pl. Resp. at 19, and that the inadvertence of her allegedly accidental kick of Officer Farrell, as well as its precipitation by Officer Hummer's illegal seizure of her, precludes probable cause for an arrest. Id. at 20-21.

**1.**     **Count II: Section 1983 False Arrest and False Imprisonment**

To prevail on a false arrest claim under Section 1983, a plaintiff must demonstrate that the police lacked probable cause to make the arrest. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). We inquire as to whether the arresting officers had probable cause to believe

the plaintiff committed the offense, not whether the plaintiff actually committed it. Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). Arrests based on probable cause cannot support a claim for false imprisonment since the basis of such a claim under Section 1983 is the Fourteenth Amendment's protections against deprivations of liberty without due process. Groman, 47 F.3d at 636 (citing Baker v. McCollan, 443 U.S. 137, 143-44 (1979)). An arrestee has a claim under Section 1983 for false imprisonment only if she is detained pursuant to an arrest made without probable cause. Id.

Defendants support their contention that probable cause existed for Campeggio's arrest with reference to Campeggio's admission that she "inadvertently" kicked Officer Farrell and a "presumption of probable cause" because of the magistrate judge's decision to hold over criminal charges against Campeggio. Def. MTD at 4-5. Plaintiff responds that "the inadvertent kick occurred **after** Officer Hummer had already seized Plaintiff around the neck without probable cause," Pl. Resp. at unnumbered pg. 20 (emphasis in original), and that courts "have consistently held that probable cause is a jury question and not a question of law for a court on a Motion to Dismiss." Id. at unnumbered pg. 22.[5]

---

[5] Plaintiff cites in support of her contention Wilson v. Russo, 212 F.3d 781, 796 (3d Cir. 2000); Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000); and Montgomery v. DeSimone, 159 F.3d 120, 124 (3d Cir. 1998). In Wilson, our Court of Appeals found that "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." Wilson, 212 F.3d at 786. Judge Pollak, in his partial concurrence, noted the majority's "implicit recognition of the fact that, in the Third Circuit, it is well established that 'the existence of probable cause in a [S]ection 1983 action is a question of fact." Id. at 796 (Pollak, J., concurring in part and dissenting in part).

Indeed, while "[t]ypically, the existence of probable cause in a [S]ection 1983 action is a question of fact," a district court "may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997); see also Merkle, 211 F.3d at 788.

An officer has probable cause for an arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey, 71 F.3d 480, 483 (3d Cir. 1995); see also Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000). We must assess the reasonableness of an officer's conduct based upon the officer's perspective at the time he or she acted. Carswell v. Borough of Homestead, 381 F.3d 235, 246 (3d Cir. 2004).

Using the totality-of-the-circumstances approach, we evaluate whether the officers had probable cause to arrest her based on the facts as Campeggio alleges them to be and in light of the substantive law of Pennsylvania under which she was charged. Zimmerman v. York, 1998 WL 111808 (E.D. Pa. Feb. 9, 1998) (Troutman, J.). To defeat a false arrest claim, officers do not need probable cause for every crime at the time of arrest: probable cause as to only one offense insulates the defendants from liability as to the other offenses. Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007).

Taking the facts as Campeggio avers them to be, there was probable cause to arrest her for simple assault. Campeggio avers that she kicked Officer Farrell, albeit "inadvertently."  In Pennsylvania, simple assault is an attempt to cause or intentionally, knowingly, or recklessly cause bodily injury to another. 18 Pa. C.S.A. § 2701 §§ A1. Even assuming that Campeggio's kick was inadvertent, under the circumstances a reasonable officer would have believed he had witnessed, or been a victim of, simple assault. Because the officers had probable cause to arrest her for that crime, they are insulated from liability on a false arrest claim -- even if there was no probable cause for the other crimes arising out of the conduct leading to the arrest. Johnson, 477

F.3d at 84-85. Because the officers had probable cause to arrest Campeggio for simple assault, her arrest cannot ground a claim of false arrest and/or imprisonment.

We therefore grant defendants' motion to dismiss Count II of Campeggio's amended complaint.

2. **Count IV: State Law False Arrest and False Imprisonment Against Officer Hummer, Officer Farrell, and Corporal Cass**

In Pennsylvania, false arrest and false imprisonment are essentially the same torts, both requiring unlawful detention. Pellegrino v. U.S. Transp. Sec. Admin., 855 F. Supp. 2d 343, 357 (E.D. Pa. 2012). False arrest claims under Pennsylvania state law and Section 1983 share the same elements of proof and damages. See Patzig v. O'Neil, 577 F.2d 841, 850 n. 9 (3d Cir. 1978) (noting that the same pleading and proof rules apply to constitutional and common law false arrest claims). Probable cause for an arrest precludes an action for false arrest and imprisonment. Glass v. City of Phila., 455 F. Supp. 2d 302, 365 (E.D. Pa. 2006). Our analysis above therefore applies to Campeggio's state law claims for false arrest and false imprisonment, and we will therefore grant defendants' motion to dismiss Count IV of the amended complaint.

D. **Count III: Monell Claims Against Upper Pottsgrove Township, West Pottsgrove Township, Chief Moffett, and Chief Swavely**

Defendants stress that Campeggio makes no factual allegations to support her legal conclusion that either of the Townships had a practice, custom, policy, and procedure of allowing excessive force by its police forces. Def. MTD at 7. Defendants similarly contend that her pleadings regarding the Townships' failure to train and supervise "are nothing more than legal conclusions and unwarranted inferences." Id. Defendants argue that the Monell claim against the Police Chiefs should be dismissed because they neither established nor maintained a policy, practice, or custom causing a constitutional harm, nor did they participate or acquiesce in

violating Campeggio's rights. Id. at 8 (citing Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010)). Our Court of Appeals has explained that a township police chief is not a final policymaker under Pennsylvania law. Santiago, 629 F.3d at 135, n. 11 (citing 53 Pa. Cons. Stat. Ann. § 66902), which vests authority over the organization and supervision of township police officers with the Township Board of Supervisors). Defendants also argue that Campeggio has not alleged any facts to support the legal conclusion that the Police Chiefs "established and maintained unconstitutional policies, or had notice of prior violative [sic] conduct by the Defendant officers." Def. MTD at 8.

A municipality is not liable for its employees' constitutional torts under a theory of respondeat superior -- that is, a municipality cannot be held liable for its employees' torts solely by virtue of their employment relationship. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A municipality is liable for its employees' violations of Section 1983 only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694.

A plaintiff can demonstrate the existence of a government policy by showing "that a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issued an official statement of policy." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)) (internal alterations omitted). To show a custom, a plaintiff must establish that state officials engaged in a course of conduct so permanent and well-settled that it operated as law. Id. (citing Monell, 436 U.S. at 690).

In either case, a plaintiff must show a government policymaker's responsibility for, or acquiescence in, the alleged tort.  Id. (citing Andrews v. City of Phila., 895 F.2d 1496, 1480 (3d

Cir. 1990)). The plaintiff need not specifically identify the responsible decisionmaker, since practices that are considered custom or policy under Monell are ascribable to municipal decisionmakers. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Thus, even if a custom or policy "has not been formally approved by an appropriate decisionmaker," it "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

And it is well-established that determining who is an official with final authority to establish municipal policy is a question of state law. See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

To be liable under Section 1983, "the government must act with deliberate indifference to the purported constitutional deprivation." Jiminez, 503 F.3d at 250. As a result, a failure to train may constitute a policy or custom giving rise to Section 1983 liability for a municipality only if the failure demonstrates deliberate indifference to residents' constitutional rights. See City of Canton v. Harris, 489 U.S. 378, 389 (1989). A failure to train evinces deliberate indifference if

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390.

There must also be "a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." Jiminez, 503 F.3d at 249 (quoting City of Canton, 489 U.S. at 385). As our Court of Appeals has explained, causation is often a question for the jury:

> [T]o sustain a § 1983 action against the City, plaintiffs must simply establish a municipal custom coupled with causation – i.e., that

> policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury. If the City is shown to have tolerated known misconduct by police officers, the issue whether the City's inaction contributed to the individual officers' decision to arrest the plaintiffs unlawfully in [a given] instance is a question of fact for the jury.

Bielevicz, 915 F.2d at 851.

Campeggio has failed to plead any factual allegations to support her Monell claim against the Townships or the Police Chiefs. In her amended complaint, she "believes and therefore avers" that the Townships and Police Chiefs have a policy of (1) permitting false arrest, false imprisonment, and malicious prosecution; (2) failing to train and supervise police officers; (3) deliberate indifference to Pottstown citizens' rights; (4) failing to take measures to stop or limit these policies; (5) failure to discipline; and (6) myriad other general failures to abide by the Constitution. Am. Comp. at ¶¶ 53-60.  She similarly alleges that as "a direct and proximate result of the malicious, intentional and reckless actions of the defendants," she suffered her injuries. Id. at ¶ 61.  Campeggio does not plead any additional factual allegations in her response to defendants' motion to dismiss, but rather reiterates the allegations of her amended complaint. Pl. Resp. at unnumbered pgs. 9-12. Plaintiff's response similarly reiterates her allegations, unsupported by well-pleaded facts, as to the Police Chiefs' liability under Monell and their supervisory liability. Id. at unnumbered pgs. 26-27. As the Supreme Court held in Twombly, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." 550 U.S. at 555.  In her amended complaint and response, Campeggio failed to allege well-pleaded facts in support of her claims, instead reciting the elements of a Monell claim as if they were facts.

We will therefore grant defendants' motion to dismiss Count III of the amended complaint.

### E.  Count V: State Law Intentional Infliction Of Emotional Distress Against Corporal Cass

Defendants argue that Campeggio has failed to state a claim for intentional infliction of emotional distress against Corporal Cass. Def. MTD at 9. Plaintiff does not oppose defendants' motion to dismiss Count V as to Corporal Cass. Pl. Resp. at 4.

We therefore grant as unopposed defendants' motion to dismiss Count V of the amended complaint as to Corporal Cass.

### F.  Count VI: Section 1983 Conspiracy

Defendants argue that Campeggio's conspiracy claim fails as a matter of law because she makes no "factual averments" regarding "any meeting of the minds or concerted action to violate Plaintiff's rights." Def. MTD at 10.

A conspiracy under Section 1983 requires that two or more conspirators reach an agreement to deprive a plaintiff of a constitutional right under color of law. Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1983) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). Such a conspiracy requires a meeting of the minds. Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008). A plaintiff must allege a factual basis to support agreement and concerted action -- the elements of conspiracy. Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 185 (3d Cir. 2009).

In Campeggio's amended complaint she alleges merely that Officer Hummer, Officer Farrell, and Corporal Cass "entered into an agreement or meeting of the minds to have plaintiff subjected to excessive force, illegally arrested, imprisoned and maliciously prosecuted." Am.

14

Comp. at ¶ 73. In her response to defendants' motion to dismiss, Campeggio recites several paragraphs from her amended complaint, emphasizing in bold that the defendants were "acting in concert" and "standing in close proximity," or "[a]cting in concert and by agreement." Pl. Resp. at unnumbered pgs. 24-25. Though Campeggio's recitation of the facts does reveal the officers acted together to subdue her in her backyard, it does not allege a factual basis supporting the existence of an agreement or any meeting of the minds to collude to violate her constitutional rights.  To be sure, Campeggio's pleadings allege concerted action, but supply no factual support for those conclusions. See Twombly, 550 U.S. at 570 (requiring plaintiffs to "nudg[e] their claims across the line from conceivable to plausible").

We will therefore grant defendants' motion to dismiss Count VI of the amended complaint.

### G.        Counts IX and XI: Section 1983 and State Law Malicious Prosecution

Defendants argue that Counts IX and XI (for malicious prosecution) under Section 1983 and state law should be dismissed because the officers had probable cause to initiate legal proceedings against Campeggio. Def. MTD at 10-11. Campeggio argues they did not. Pl. Resp. at 22.

To prove malicious prosecution under Section 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009); Johnson v. Knorr, 477 F.3d 75, 82-83 (3d Cir. 2007). A state law cause of action for malicious prosecution

includes the same first four elements, but does not require showing a deprivation of liberty. See Napier v. City of New Castle, 407 F. App'x 578, 583 (3d Cir. 2010) (listing the elements of the Pennsylvania cause of action for malicious prosecution as enumerated in Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Cmwlth. 2003)).

　　Probable cause for one charge in an alleged malicious prosecution does not necessarily defeat a plaintiff's claims for malicious prosecution as to the other charges.[6] Johnson, 477 F.3d at 85 (citing Edwards v. City of Phila., 860 F.2d 568, 576 (3d Cir. 1988)). Malicious prosecution claims can be examined on a charge-by-charge basis for probable cause to the extent that the plaintiff was additionally burdened by defending herself against prosecution on multiple charges. Id.  But a plaintiff cannot establish a malicious prosecution claim if the charges for which there was no probable cause did not additionally burden the plaintiff, who would in any case have had to defend against the charges for which there was probable cause.[7] Id. at 86.

　　Taking Campeggio's factual allegations as true, Campeggio has not stated a claim for malicious prosecution. Though the defendant officers initiated the criminal proceedings -- which ended in Campeggio's favor via acquittal -- the proceedings were initiated with probable cause for at least the simple assault charge.  McKenna, 582 F.3d at 461 (listing the first three factors in

---

[6] This is distinct from the false arrest context, where probable cause for one crime of arrest defeats the entire false arrest claim, even for offenses for which the police lacked probable cause. Johnson, 477 F.3d at 85.

[7] As the Court of Appeals in Johnson put it, a plaintiff:

> cannot establish a Fourth Amendment malicious prosecution case because the prosecution for the additional charges for which there might not have been probable cause in no way resulted in additional restrictions on his liberty beyond those attributable to the prosecution on the terroristic threats charges for which there was probable cause.

Id. at 86.

a malicious prosecution claim). Campeggio has not alleged any greater burdens put on her based on the additional charges. Campeggio also fails to make any factual averments regarding factors four and five -- namely, defendants' malicious intents or actions for a purpose other than bringing her to justice or a depriving her of her liberty. Id. (listing the final two factors in a malicious prosecution claim). Campeggio has not stated a claim for malicious prosecution under either Section 1983 or Pennsylvania law.

We will therefore grant defendants' motion to dismiss Counts IX and XI of the amended complaint.

### H.    Qualified Immunity as to Corporal Cass

Defendants argue that Corporal Cass is entitled to qualified immunity because he did not violate Campeggio's clearly-established constitutional rights and his alleged conduct was consistent with that of a reasonable officer under the circumstances. Def. MTD at 12. Specifically, defendants argue that

> Plaintiff's allegation that [Corporal Cass] brought Plaintiff to the ground after she kicked another officer warrants protections of Qualified Immunity. In light of the fact that Plaintiff fails to allege that he engaged in any additional conduct, he should be entitled to Qualified Immunity on all of Plaintiff's Section 1983 claims.

Id. Plaintiff responds that

> Corporal Cass was on notice that slamming the Plaintiff to the ground without justification or cause constituted excessive force in violation of the Fourth Amendment. Corporal Cass was also on notice that stomping an arrestee's leg after she is handcuffed and kicking her in the ribs constitutes excessive force, and that standing by and watching a fellow officer do it also violates the Fourth Amendment.

Pl. Resp. at unnumbered pg. 30.

Qualified immunity shields government officials from liability for civil damages to the extent that their conduct did not violate clearly established constitutional rights of which a reasonable officer would have known. Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal alterations omitted)). Our Court of Appeals has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); see also, e.g., Mitchell v. Twp. of Willingboro, 913 F. Supp. 2d 62, 67 (D.N.J. 2012) (quoting Newland for this proposition and rejecting a qualified immunity defense at the Rule 12(b)(6) stage). But as qualified immunity is "an immunity from suit rather than a mere defense to liability," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step process for addressing claims of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

Id. at 201. Subsequently, the Supreme Court held this two-step process to be optional -- not mandatory -- but frequently beneficial. Pearson, 555 U.S. at 227, 236.

We consider whether, reading Campeggio's allegations in the light most favorable to her, she has alleged facts sufficient to state a claim that Corporal Cass's conduct violated a

constitutional right. Because we have dismissed Counts II, III, IV, VI, IX, and XI as to all

defendants, and Count V as to Corporal Cass, our analysis is restricted to whether Corporal Cass

violated Campeggio's constitutional rights under Section 1983 as to Count I, excessive force,

and Count VII, bystander liability.[8]

1.      **Count I: Excessive Force**

**Whether Corporal Cass Violated a Clearly-Established Constitutional Right**

Excessive force claims in an arrest or investigatory stop context should be characterized

as claims under the Fourth Amendment's protections against unreasonable seizures. Graham v.

Connor, 490 U.S. 386, 394 (1989). As such, we will analyze plaintiff's excessive force claims in

the arrest context under the Fourth Amendment's objective reasonableness standard. See, e.g.,

Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) (citing Graham, 490 U.S. at 388). Such a

Fourth Amendment claim requires showing that a seizure occurred and that it was unreasonable.

Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005) (internal quotations and alterations

omitted).

The application of physical force to restrain movement constitutes a Fourth Amendment

seizure. United States v. Dupree, 617 F.3d 724, 726 (3d Cir. 2010). Because Campeggio was

seized, we inquire as to whether the force used to effect that seizure was excessive and therefore

unreasonable. The reasonableness assessment balances the nature of the intrusion on her Fourth

Amendment interests against a legitimate governmental interest. Graham, 490 U.S. at 396. The

right to make an arrest or investigatory stop necessarily includes the right to use, or threaten to

use, some degree of physical coercion. Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).

Determining whether an officer used force beyond that which a threat justified -- excessive force

_____

[8] The parties did not address Count VIII, state law assault and battery, and neither do we.

-- "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Such reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (quoting Graham, 490 U.S. at 396). The inquiry looks objectively at the officers' actions in light of the facts and circumstances of the situation and does not consider officers' subjective intent. Graham, 490 U.S. at 397.

Taking the allegations in Campeggio's complaint as true, Corporal Cass did not act unreasonably. Reasonableness under the Fourth Amendment can be judged through "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. By Campeggio's account, she had done nothing except tell Officer Hummer that he had made a mistake in coming to her home and turned away to make a cell phone call before Officer Hummer seized her around the neck. Am. Comp. at ¶ 18-20. Campeggio's legs allegedly flailed uncontrollably, resulting in her inadvertently kicking Officer Farrell as he tried to throw her legs over the fence. Id. at ¶ 21. After the inadvertent kick, by Campeggio's account, she "was violently taken to the ground in her backyard by defendant Police Officer Sean Farrell and/or Defendant Corporal Brian Cass, acting in concert." Id. at ¶¶ 21-23.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal citations and

quotations omitted).  Even crediting Campeggio's account as true, Corporal Cass assisted Officer Farrell in bringing Campeggio to the ground -- albeit forcefully -- after Campeggio had "inadvertently" kicked Officer Farrell. The inquiry into the reasonableness of force is an objective one, made from the perspective of a reasonable officer at the scene. Having observed Officer Hummer attempt to subdue Campeggio, as well as Officer Farrell's unsuccessful attempt to control Campeggio's flailing legs, a reasonable officer would have concluded that assisting Officer Farrell in subduing Campeggio by bringing her to the ground was reasonable under the circumstances.

Because we hold that Corporal Cass did not violate Campeggio's constitutional rights, we do not proceed past the initial inquiry. Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

We therefore grant defendants' motion to dismiss for failure to state a claim on Count I, excessive force, solely as to defendant Corporal Cass, on the basis of qualified immunity.

## 2. **Count VII: Bystander Liability**

Campeggio asserts that Corporal Cass is not entitled to qualified immunity on the bystander liability claim, since he did not intervene when Officer Farrell kicked her after she had been handcuffed and zip-tied on the ground. Pl. Resp. at 30. Defendants do not specifically address Corporal Cass's entitlement to qualified immunity on Campeggio's bystander liability claim, but rather argue that because Campeggio has failed to allege that Corporal Cass engaged in any other conduct beyond helping to bring her to the ground after she kicked Officer Farrell, he is entitled to qualified immunity on all of her Section 1983 claims. Def. MTD at 12.

**Whether Corporal Cass Violated a Clearly-Established Constitutional Right**

A police officer has a duty to take reasonable steps to protect a victim from another officer's excessive force; failure or refusal to intervene when an unprovoked beating takes place in his presence creates liability under Section 1983. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). An officer is only liable, however, if there was a realistic and reasonable opportunity to intervene. Id. at 651.

Taking the facts as Campeggio alleges them, Corporal Cass may be liable under Section 1983 for failing to intervene when Officer Farrell allegedly stomped and kicked Campeggio after she had been handcuffed and zip-tied on the ground. Whether there was a realistic and reasonable opportunity to intervene is a question of fact. But, based on Campeggio's pleadings, Corporal Cass was present during her alleged assault, and these factual averments are sufficient to survive defendants' motion to dismiss as to bystander liability.

When a favorable view of the parties' submissions reveals a constitutional violation, we next inquire whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The unlawfulness must be apparent. Id.

Our Court of Appeals has established that a police officer's failure to intervene when another officer uses excessive force in his presence creates liability under Section 1983. Smith, 293 F.3d at 650. Smith has been law since 2002, and Corporal Cass's alleged conduct took place in March 2012.  Many cases since then have cited Smith for this proposition and applied the law accordingly. See, e.g., Bryant v. City of Philadelphia, 2012 WL 258399 (E.D. Pa. Jan. 27, 2012) (Robreno, J.); Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 701 (E.D. Pa. 2011); Wright v.

22

Mostnak, 2011 WL 3273248 (E.D. Pa. Aug. 1, 2011) (McLaughlin, J.); Gorman v. Warwick

Twp., 2011 WL 1235198 (E.D. Pa. Apr. 1, 2011) (Joyner, J.).

At the time Corporal Cass allegedly failed to intervene to stop Officer Farrell's alleged

use of excessive force, as Campeggio claims, his obligation to intervene and his failing to had

been clearly established.

We therefore deny defendants' motion to dismiss Count VII of Campeggio's amended

complaint as to Corporal Cass on the basis of qualified immunity.


**V.      Conclusion**

We will therefore grant in part and deny in part defendants' partial motion to dismiss. An

Order doing so follows.

BY THE COURT:

/S/ STEWART DALZELL, J.
